UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEIRTON USA, INC., a Washington Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, a federal agency,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT FOR A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

## I. INTRODUCTION

COMES NOW Plaintiffs Keirton USA, Inc., by and through its counsel in this matter, Buchalter, a Professional Corporation, and brings this action for a declaratory judgment and injunctive relief against Defendant U.S. Customs and Border Protection, alleging as follows:

## II. PARTIES

1. Keirton USA, Inc. ("Keirton" or "Plaintiff") is a Washington Corporation with its principal place of business in Ferndale, Washington.

2. U.S. Customs and Border Protection ("CBP" or "Defendant") is a federal agency.

COMPLAINT FOR A DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF - 1
CASE NO. _____

BUCHALTER
1420 FIFTH AVE., SUITE 3100
SEATTLE, WA 98101-1337
PH: 206.319.7052

## III. JURISDICTION AND VENUE

3. Jurisdiction is proper as the claims arise out of federal statutes 19 U.S.C. § 1595a(c)(2)(A), 21 U.S.C. § 863(a)(3), and 21 U.S.C. § 863(d), 22 U.S.C. § 2201 and Defendant is a federal agency. This court also has original jurisdiction over the seizures pursuant to 28 U.S.C. § 1356. This court also has jurisdiction pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1367. The United States has waived sovereign immunity pursuant to 5 U.S.C. § 702 for actions seeking other than monetary relief.

4. Venue is proper pursuant to 28 U.S.C. § 1391 as Plaintiff is a corporation located in the State of Washington, does business in the State of Washington, and the property at issue was denied entry by CBP in Blaine, Washington.

## IV. FACTS

5. Keirton is a Washington company with its manufacturing base located in Ferndale, Washington. Keirton develops and builds agricultural equipment used to process hemp, kale, hops, and other farm goods. It manufactures and imports parts and components as well as finished equipment from British Columbia, Canada, China, Taiwan, and Japan to its location in Ferndale, Washington.

6. Keirton's finished equipment, parts, and components are used for agricultural purposes, including processing hemp, kale, hops, and other farm goods. Finished equipment includes a Twister Trimmer, which has two components. The first is the trimmer which separates branches from leaves and crop heads, and the second, a vacuum, vacuums up the waste generated from the agricultural processing (the "Twister Trimmer" or, collectively with the components, the "Merchandise""). The Merchandise, once assembled, is sold.

7. Keirton has taken appropriate steps to ensure that its Merchandise is used only for lawful purposes. Keirton has agreements with its customers that they will not sell Keirton's Merchandise to anyone who may seem to be engaged in or intends to engage in illegal activity. The agreements also state Keirton will not put products or equipment in any materials that would be construed, either by content or placement, as soliciting the business of persons engaged in or intending to engage in illegal activity.

8. Keirton has been operating since 2008, importing goods into the United States hundreds of times. Prior to May 2020, Keirton had only one other shipment seized by CBP for a shipment to Canada from a Washington port in 2012.

9. In 2012, CBP unlawfully detained and subsequently seized a shipment being imported by Keirton—a Twister Trimmer—on the basis that it constituted "drug paraphernalia." Through a non-confidential settlement agreement, CBP released the vacuum part of the Goods but kept the trimming component, which another governmental agency sold to U.S. consumers through an online auction in Florida, thereby confirming by CBP's own conduct that the Merchandise was not "drug paraphernalia."

10. CBP also verbally promised Keirton it would not seize any more like-kind Merchandise (which, of course, would include discrete subparts contained in the Merchandise it either returned or sold). From 2012 through 2019, CBP kept its promise and did not engage in any further illegal seizures of vacuums, trimmers, and discrete subparts/components all of which make up the Merchandise until 2020.

11. In the summer of 2020, CBP broke its promise and began seizing the Merchandise that Keirton uses to make its vacuums and trimmers (all are discrete subparts

COMPLAINT FOR DECLARATIVE AND INJUNCTIVE RELIEF - 3

BUCHALTER
1420 FIFTH AVE., SUITE 3100
SEATTLE, WA 98101-1337
PH: 206.319.7052

associated with one or the other).

12. Specifically, in 2020, on October 7, October 15, November 5, November 9, November 11, November 25, and December 16, fourteen shipments of Keirton's Merchandise were seized by CBP agents and subject to forfeiture under the provision of 19 U.S.C. § 1595a(c)(2)(A), 21 U.S.C. § 863(a)(3), and 21 U.S.C. § 863(d). The Merchandise was detained with CBP claiming, without evidence, that the Merchandise would be used for an unlawful purpose (assuming it would once again, eight years later, mischaracterize the Merchandise as "drug paraphernalia"). CBP appraised the value of the Merchandise at $1,045,472.

13. After Keirton initiated litigation against CBP, Keirton and CBP came to another settlement on December 31, 2020. Neither party admitted fault or liability and all of the Merchandise was released, for a payment of $180,000. The public settlement agreement ("Agreement") expressly confirmed the fact that the Merchandise would be released to Keirton as quickly as possible so it could be 1) assembled and 2) sold within the United States.

14. CBP;s conduct in releasing the Merchandise made it clear that introduction of the Merchandise into the United States for sale did not violate the law. Or evaluated another way, had the seized product been cocaine, CBP would have have given it back to the dealer for a small payment so the cocaine could be sold in the United States.

15. The Settlement Agreement, attached hereto as Exhibit A, even mandated that CBP "**cooperate and provide all necessary assistance to Keirton so that the third-party storage facilities release the Subject Merchandise… so it can complete assembly and fabrication and take the completed units to market**." Paragraph 3 (emphasis supplied).

16. For reasons that remain unclear and contrary to the actions of CBP in releasing the $1,000,000 in Merchandise to Keirton, in early January 2021, only weeks later, the CBP again seized identical imported Merchandise for Keirton's harvesting equipment that was entering the United States through Blaine, Washington.

17. However, this time, CBP took a different and far more tricky/gaming approach. CBP didn't "seize" the components. Instead, CBP denied entry to the components and informed Keirton, in writing that CBP was "**unable to make an admissibility determination.**" Attached hereto as Ex. B (emphasis supplied).

18. The Merchandise that was denied entry because CBP could not make an entry admissibility determination was exactly the same Merchandise CBP has let into the United States from 2012 to 2019, the exact Merchandise CBP seized in 2020 only to return to Keirton after a $180,000 payment, and is identical to another shipment that was allowed entry in 2021. It is impossible for CBP to claim it could not make an admissibility determination because it has made admissibility determinations for this exact merchandise hundreds of times over the past 9 years.

19. CBP did not give a reason for this action, because by not doing so, it thought it could avoid a declaratory judgment action on its decision to deny entry and this claim for injunctive relief. In fact, its actions did just the opposite, however requiring Keirton to file a FTCA claim for the temporal damages CBP's agents, Ms. Hickman and Ms. Wagner, have caused to date.

20. The Merchandise that was denied entry in January of this year are the same Merchandise that CBP has allowed into the United States on hundreds of occasions.

21. The Merchandise that was denied entry in January of this year are also the same Merchandise that CBP seized then partly released and partly sold in 2012.

22. The Merchandise that was denied entry in January of this year are also the same Merchandise that CBP released pursuant to the Agreement entered in December 2020.

23. Without this shipments, and those in process, Keirton cannot manufacture its harvesting equipment.

24. Keirton has over 100 employees with 50 employees at its Ferndale, Washington, location. Keirton's viability as a business and employer is dependent on its ability to import goods. Without the ability to import the Merchandise that CBP has allowed into the country on hundreds of previous occasions, Keirton will soon have to lay off all of its employees and close the business permanently.

## V. CAUSES OF ACTION

### DECLARATORY RELIEF – CIVIL RULE 57

**(Count One)**

25. Keirton re-alleges all prior allegations contained in the previous paragraphs as if set forth in full herein.

26. A ripe and justiciable controversy exists with regard to the circumstances and legality of CBP's denial of entry of Plaintiff's Merchandise in its January 2021 shipment.

27. Plaintiff's Merchandise is legal under applicable law.  This is confirmed by (1) the conduct of the CBP in 2012, when it returned and detained/seized the vacuum portion of the Twister Trimmer and then auctioned off to the public the trimming portion of the Twister Trimmer; (2) CBP's conduct from 2013-2019 when it granted entry to every shipment of

Merchandise Keirton made into the United States; and (3) CBP's conduct in the 2020 settlement agreement, wherein it worked with Keirton to coordinate the release of its Merchandise that CBP valued at almost $1,500,000, so that Keirton could complete its assembly and sale into the United States marketplace in return for a payment of $180,000.

28. CBP's actions in denying entry to the Merchandise creates a judiciable controversy over the legality of the Merchandise's entry, even though CBP attempts, in a clever way, to avoid classifying the basis of the denial.

29. This Court should declare, as a matter of law, that the Keirton Merchandise is legal under the applicable laws, as provided in those laws and given the conduct of CBP for the past 15 years.

30. Keirton requires judicial intervention through a declaratory judgment, because a real and judiciable controversy exists over the admissibility of its Merchandise, necessitating a declaration from this Court that the denial of entry by CBP (and any future denial of entry of Merchandise) is not legal under applicable laws.

**INJUNCTIVE RELIEF – CIVIL RULE 65**

31. Keirton re-alleges all prior allegations contained in the previous paragraphs as if set forth in full herein.

32. Keirton seeks to import legal Merchandise for lawful purposes and has taken appropriate steps to ensure its Merchandise is used for lawful purposes.

33. Keirton is likely to succeed on the merits of its claim because CBP has wrongfully denied Keirton's Merchandise entry into the United States. This denial was made despite CBP being informed of the Merchandise's intended lawful purposes and end users.

34. The Merchandise has been affirmed as legal by the acts of CBP over the past 9 years, including allowing hundreds of like-kind shipments into the United States, seizing and then returning to Keirton almost $1,500,000 in Merchandise in an expedited manner so it could assemble and sell the same into the United State marketplace, and by declining to categorize it as drug paraphernalia in its most recent denial on entry letter (Ex. B).

35. Keirton will be irreparably harmed by CBP's conduct in denying entry to its Merchandise in the future if this Court does not enjoin the same. Without injunctive relief, continued exclusion of Keirton's Merchandise will result in the shuttering of Keirton's business and the displacement of 50 workers in Ferndale, Washington.

36. The balance of the equities tips strongly in Keirton's favor. Keirton will be driven out of business if CBP's actions in detaining and then denying entry, without explanation, stand. Conversely, the government has no interest in preventing the sale of Twister Trimmers or their components, as it put the trimmer component of a Twister Trimmer up for auction to the general public in 2012 after seizing it from Keirton and gave the vacuum component back to Keirton. In addition, pursuant to the Agreement between CBP and Keirton from December 2020, CBP returned the similar and identical components back to Keirton, which CBP valued at almost$1,500,000, in return for an $180,000 payment, with the express contractual representation that Keirton would assemble the Merchandise and sell all of it into the United States marketplace. And finally, CBP is now playing games, refusing to even categorize the rejected shipments, instead asserting an inability to assess what it has assessed hundreds of times over the past 9 years.

37. The public interest will be served by the issuance of an injunction. The public

has an interest in preventing agency overreaching, prevent inconsistent agency action, in the preservation of legally operated businesses that conduct import and export businesses, and in a clear interpretation of the statute and its lawful application.

## VI. PRAYER FOR RELIEF

WHEREFORE, having fully plead, Keirton prays for the following relief:

1. An Order from this Court declaring that CBP may not deny entry into the United States the Merchandise of Keirton;

2. An Order enjoining CBP from denying entry to, seizing, or detaining Keirton's Merchandise;

3. An Order maintaining the status quo pending trial of the declaratory judgment and claims for injunctive relief, permitting Keirton to import its Merchandise and not be ruined as a business as a result of the actions of CBP and its representatives, Ms. Hickman and Ms. Wagner;

4. For an award of legal fees and costs, as permitted by statue or common law; and

5. For such other and further relief as this Court deems just and equitable.

Dated:   February 23, 2021              BUCHALTER

By: */s/ Brad P. Thoreson*
Brad P. Thoreson, WSBA #18190
Harold (Hal) E. Snow, Jr., WSBA #32645
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101-1337
Telephone: 206.319.7052
Email: bthoreson@buchalter.com
Email: hsnow@buchalter.com

*Attorneys for Plaintiff Keirton USA, Inc.*

BN 44385431v1