1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEIRTON USA INC.,

              Plaintiff,

   v.

UNITED STATES CUSTOMS AND
BORDER PROTECTION,

              Defendant.

C21-224 TSZ

ORDER

       THIS MATTER comes before the Court on a Motion for a Temporary Restraining

Order, docket no. 8, brought by Plaintiff Keirton USA Inc. ("Keirton"). At a telephone

status conference on March 3, 2021, the parties agreed to treat the motion as a motion for

a preliminary injunction ("Motion"). Minute Entry (docket no. 16). The Court has

reviewed all papers filed in support of, and in opposition to, the Motion and held oral

argument on March 26, 2021. At oral argument, Keirton stated that it was seeking

injunctive relief only for future shipments and not for the January 2021 shipment that

Defendant United States Customs and Border Protection ("CBP") excluded. At the

conclusion of the hearing on March 26, 2021, the Court denied the Motion and deferred

1   the issue of the Court's subject matter jurisdiction.  The Court now enters this Order

2   explaining its oral ruling and addressing the deferred issue of jurisdiction.

3   **Background**

4          Keirton manufactures and imports parts and components used for agricultural

5   purposes, as well as finished agricultural equipment, from British Columbia, Canada,

6   China, Taiwan, and Japan.  Fluckiger Decl. at ¶ 3 (docket no. 12).  Keirton's primary

7   finished product is the Twister Trimmer, a machine that separates branches from the

8   leaves and crop heads.  Id.  To the best of Keirton's knowledge, and pursuant to its

9   contractual agreements with buyers, its buyers use the Twister Trimmer for legal

10  purposes.  Id. at ¶ 5.

11         In the fall of 2020, CBP seized a number of Keirton's shipments as illegal drug

12  paraphernalia.[1]  Hickman Decl. at ¶ 4 (docket no. 21); Ex. A to Complaint (docket no. 1-

13  1 at 2).  In response, Keirton filed a complaint in this District, seeking a temporary

14  restraining order ("TRO").  Keirton USA, Inc. v. U.S. Customs and Border Prot., Case

15  No. 20-1734-RSM, 2020 WL 6887871, at *1 (W.D. Wash. Nov. 24, 2020).  The court in

16  that prior case denied Keirton's motion, concluding that Keirton had failed to

17  demonstrate a likelihood of irreparable harm in the absence of emergency relief.  Id. at

18  *2.  To support its motion for a TRO in that prior case, Keirton submitted declarations

19  from its President and CEO, Jay Evans, and its Director of Manufacturing, Jason

20

21  [1] CBP asserts that it began seizing Keirton's merchandise after seeing articles in which Keirton's
    President and CEO discussed its merchandise in connection with cannabis.  Hickman Decl. at ¶¶ 12–14
22  (docket no. 21).

23

1  Fluckiger.  Id.  The court concluded that the declarations, submitted by Keirton's own

2  management, offered conclusory assertions and were thus insufficient, standing alone, to

3  establish that Keirton would close without emergency relief.  Id.

4          After the court denied Keirton's motion for a TRO in case number 20-1734-RSM,

5  the parties reached a settlement agreement in which Keirton agreed to pay a remission fee

6  in exchange for CBP releasing the seized merchandise ("2020 Settlement").  See Ex. A to

7  Complaint (docket no. 1-1 at 3).

8          On January 19, 2021, CBP again detained one of Keirton's shipments containing

9  $34,936.24 worth of agricultural equipment.  Hickman Decl. at ¶ 18; Ex. F to Hickman

10  Decl. (docket no. 21-6).  CBP requested additional information relating to the legality and

11  admissibility of the detained equipment.  Ex. G to Hickman Decl. (docket no. 21-7).  In

12  response to CBP's request to "[i]dentify and explain the intended end product," Keirton

13  stated "[a]gricultural leaves separated from branches and stems."  Ex. H to Hickman

14  Decl. (docket no. 21-8).  When asked to "[i]dentify and explain the materials the

15  imported item will use to manufacture, produce, or process," Keirton responded

16  "[a]gricultural crop branches and leaves."  Id.  Most of Keirton's responses to the other

17  questions repeated variations of these answers.  Id.  Keirton also responded to questions

18  by referring CBP to the Twister Trimmer User Manual.  Id.  Finding Keirton's responses

19  to be "vague and unclear," CBP "was unable to make an admissibility determination."

20  Hickman Decl. at ¶¶ 23–24.

21          Accordingly, on February 11, 2021, CBP notified Keirton that it was excluding the

22  merchandise at issue pursuant to 19 U.S.C. § 1499(c)(5) and 19 C.F.R. §§ 151.16(f), (j).

23

1   Ex. I to Hickman Decl. (docket no. 21-9).  CBP also notified Keirton of its right to

2   protest the decision pursuant to 19 U.S.C. § 1514.  Id.  Keirton did not file a protest

3   pursuant to 19 U.S.C. § 1514(a); rather, it filed this Motion seeking prospective relief to

4   prevent CBP from excluding future shipments.

5   **Discussion**

6        **A.  Subject Matter Jurisdiction**

7        CBP argues that the Court of International Trade ("CIT") has exclusive

8   jurisdiction over this action.  The Court agrees.

9        Congress may preclude district court jurisdiction by enacting an alternative

10  statutory scheme for administrative and judicial review.  Axon Enter., Inc. v. Fed. Trade

11  Comm'n, 986 F.3d 1173, 1177–78 (9th Cir. 2021).  Courts use a two-step inquiry to

12  determine whether Congress has impliedly precluded jurisdiction.  Id. at 1178.  "First, a

13  court asks 'whether Congress's intent to preclude district-court jurisdiction is fairly

14  discernable in the statutory scheme.'"  Id. (quoting Bennett v. U.S. Sec. and Exch.

15  Comm'n, 844 F.3d 174, 181 (4th Cir. 2016)).  "Second, a court considers 'whether

16  plaintiffs' claims are of the type Congress intended to be reviewed within this statutory

17  structure.'"  Id.

18        **1.  Congress's Intent to Preclude District Court Jurisdiction**

19        To determine whether it is "fairly discernible" that Congress precluded district

20  court jurisdiction, courts examine the statutory text, structure, and purpose.  See Elgin v.

21  Dep't of Treasury, 567 U.S. 1, 10 (2012) (citing Thunder Basin Coal Co. v. Reich, 510

22

23

1   U.S. 200, 207 (1994)).  A "comprehensive review process" demonstrates an intent to

2   preclude district court review.  See Thunder Basin Coal Co., 510 U.S. at 208.

3         The Tariff Act of 1930 ("Act") establishes a detailed structure for reviewing

4   CBP's decisions to exclude merchandise.  Wirtgen Am., Inc. v. United States,

5   443 F. Supp. 3d 198, 215 (D.D.C. 2020) (citing Thunder Basin Coal Co., 510 U.S. at

6   207). Under the Act, an importer may file a protest with Custom Service within 180 days

7   of CBP excluding a shipment from entry into the United States.  19 U.S.C. §§ 1514(a),

8   (c)(3).  Importers may also request an accelerated disposition, in which case a protest will

9   be deemed denied if, after 30 days, Custom Service has not resolved the protest.  Id.

10  § 1515(b).  If Custom Service denies a protest, the importer may file a civil action to

11  contest that denial in the CIT.  See id. § 1514(a).  The CIT has exclusive jurisdiction over

12  any civil action contesting the denial of a protest.  28 U.S.C. § 1581(a).  An importer may

13  appeal a final decision from the CIT to the Federal Circuit, which has exclusive

14  jurisdiction over appeals from the CIT.  Id. § 1295(a)(5).  Courts have found such

15  "exclusive" grants of jurisdiction to preclude district court jurisdiction over claims

16  relating to the relevant statutory scheme.  See, e.g., Thunder Basin Coal Co., 510 U.S. at

17  208; Jarkesy v. S.E.C., 803 F.3d 9, 16 (D.C. Cir. 2015); Wirtgen Am., Inc.,

18  443 F. Supp. 3d at 211.

19        The detailed structure of the Act demonstrates Congress's intent to preclude this

20  challenge.  See Thunder Basin Coal Co., 510 U.S. at 207–09.  Nothing in the text of the

21  Act suggests that an importer may avoid its review structure by declining to file a protest

22

23

and instead filing a district court action challenging future enforcement proceedings.[2]

The Court concludes that the Act reflects a fairly discernible intent to preclude district

court jurisdiction over CBP's exclusion decisions.

## 2.  Claim Is of Type to Be Reviewed within the Statutory Scheme

When inquiring whether a party's claims are of the type Congress intended to be

reviewed within the statutory structure, courts "must consider:  (1) whether the plaintiff

can obtain meaningful judicial review in the statutory scheme, (2) whether the claim is

'wholly collateral' to the statutory scheme, and (3) whether the claim is outside the

agency's expertise."  Axon Enter., Inc., 986 F.3d at 1181 (citing Elgin, 567 U.S. at 15).

These factors are "general guideposts useful for channeling the inquiry into whether the

particular claims at issue fall outside an overarching congressional design."  Id. (quoting

Jarkesy, 803 F.3d at 17).  Further, the presence of meaningful judicial review is sufficient

to decide that Congress precluded district court jurisdiction over a type of claim.  Id.

In considering these factors, Keirton's claim regarding possible future action by

CBP is of the type over which Congress precluded district court jurisdiction.  First,

Keirton fails to argue that it could not obtain meaningful judicial review in the CIT.

Indeed, the CIT could grant Keirton's claim for injunctive relief.  USCIT R. 65;

28 U.S.C. § 2643(c)(1).  For example, in One World Technologies, Inc. v. United States,

380 F. Supp. 3d 1300 (Ct. Int'l Trade 2019), an importer sought an injunction from the

---

[2] Here, Keirton seeks an order finding that its merchandise is not drug paraphernalia and requiring "CBP to cease and desist from future detentions and rejections of the Merchandise/the Twister Trimmer components."  See Keirton's Proposed Order (docket no. 8-1).

1    CIT to allow future imports of its merchandise into the United States after CBP excluded

2    four of its shipments.  Id. at 1308.  The CIT considered the preliminary injunction under

3    the same four factors used by this Court, see Section B infra, and granted the preliminary

4    injunction.  Id. at 1321–24.  As One World Technologies demonstrates, Keirton would

5    not be precluded from all meaningful judicial review if this Court lacks jurisdiction over

6    its claims.  This factor favors jurisdiction preclusion.

7         Turning to the second factor, a claim is "wholly collateral" if a party does not raise

8    it in response to an administrative proceeding.  Axon Enter., Inc., 986 F.3d at 1185.  If,

9    however, the claim is the procedural vehicle by which the party is using to reverse the

10   agency action, then the party must seek relief through the statutory scheme.  Id. at 1185–

11   86.  Here, Keirton's claim for injunctive relief is raised in response to CBP's exclusion

12   decision and is the vehicle by which it seeks to prevent CBP from excluding future

13   shipments.  This constitutes a challenge to CBP's decision to exclude its merchandise,

14   which is precisely the type of action regularly adjudicated by the CIT and the Federal

15   Circuit within the statutory scheme.  See Elgin, 567 U.S. at 22.

16        At least one district court has considered jurisdictional preclusion under similar

17   circumstances.  In Wirtgen America, CBP excluded several machines from entry into the

18   United States, determining the machines fell within a Limited Exclusion Order ("LEO").

19   443 F. Supp. 3d at 203.  The importer, Wirtgen, then filed a motion for a preliminary

20   injunction in the D.C. district court and sought to prevent CBP from applying the LEO to

21   future shipments of its machines and to require CBP to permit entry of its future

22   shipments into the United States.  Id.  The district court held that it lacked jurisdiction

23

1  over the Wirtgen's claims because it was clear that Congress had intended the Tariff

2  Act's alternative statutory scheme to "be the exclusive forum for challenging exclusion

3  decisions by [CBP]." Id. at 214.  The court rejected Wirtgen's argument that district

4  court jurisdiction was appropriate because it sought prospective, as opposed to

5  retrospective relief. Id. at 217.  The court reasoned that "[e]ven assuming that Wirtgen

6  would have standing to seek prospective relief separate from [CBP's] exclusion of its

7  particular machines, Wirtgen ha[d] not shown that its claims . . . fall outside the scope of

8  [the] special statutory scheme." Id. (citation omitted).[3]

9       Similarly, Keirton has failed to show that its request for prospective relief falls

10  outside of the Act's comprehensive review structure.  Instead, Keirton's claims are the

11  procedural vehicle it is using to challenge CBP's exclusion decision.  Accordingly,

12  Keirton's claims are not wholly collateral to the statutory scheme.

13       Finally, a claim is within an agency's expertise when it involves "technical

14  considerations of [agency] policy." Axon Enter., Inc., 986 F.3d at 1186 (quoting Free

15  Enter. Fund v. Pub. Co. Acct. Oversight Bd., 561 U.S. 477, 491 (2010)).  Given that

16

17  _____

18  [3] Although Wirtgen America is distinguishable because the importer, Wirtgen, filed a protest with the CIT, it is noteworthy because the district court held that the CIT had exclusive jurisdiction to consider exclusion decisions.  In that case, at the time Wirtgen moved for a TRO and preliminary injunction before

19  the D.C. district court, it had a claim pending before the CIT to review Custom Service's denial of its protest pursuant to 19 U.S.C. § 1514(a). See 443 F. Supp. 3d at 203.  While the case was on appeal, the CIT determined that CBP improperly excluded Wirtgen's machines. Wirtgen Am. Inc. v. United States,

20  447 F. Supp. 3d 1359, 1370–71 (Ct. Int'l Trade 2020).  As a result, the D.C. Circuit dismissed Wirtgen's appeal as moot because Wirtgen had received all the relief it had requested in its complaint. Wirtgen

21  Am., Inc. v. United States, No. 20-5064, 2021 WL 1158195, at *1 (D.C. Cir. Jan. 12, 2021).  The D.C. Circuit remanded the case to the district court with instructions to consider vacatur of its prior order in

22  light of the mootness issue. Id.

23

ORDER - 8

1   Keirton is challenging the merits of whether CBP may exclude its future shipments from

2   entry into the United States, the CIT's experience in interpreting exclusion orders can be

3   brought to bear on Keirton's claims.  See Wirtgen Am., Inc., 443 F. Supp. 3d at 218.  The

4   Court concludes that it lacks subject matter jurisdiction over Keirton's claims and

5   dismisses the Complaint.

6                          **3.  Adequate Remedy**

7          Keirton cites Jerlian Watch Company v. U.S. Department of Commerce, 597 F.2d

8   687 (9th Cir. 1979) to argue that even if the CIT has jurisdiction, this Court also has

9   jurisdiction under the "no adequate remedy" exception.  CBP disputes the validity of this

10  exception.  Even assuming Jerlian Watch created an exception, Keirton fails to meet that

11  exception.  Keirton contends that the CIT does not provide an adequate remedy because it

12  will go out of business without injunctive relief.  Motion (docket no. 8 at 3 n.2).  In

13  Jerlian Watch, however, the Ninth Circuit rejected the argument that financial hardship

14  could create an exception to otherwise exclusive jurisdiction.  597 F.2d at 692

15  ("[F]inancial hardship is irrelevant to a determination of whether an adequate remedy

16  exists.").  Instead, "[t]he dispositive consideration in determining whether plaintiffs have

17  an adequate remedy is the nature of the barrier and not its financial height."  Id.  Thus,

18  because Keirton can raise its claim for injunctive relief in the CIT, it fails to meet the

19  exception.[4]

20  _____

21  [4] After the Court held oral argument, Keirton submitted a declaration stating that if this Court determined
    it lacked jurisdiction, "CBP will almost certainly assert the [CIT] is not the proper forum for Keirton's

22  claim either."  Thoreson Supp. Decl. (docket no. 26 at ¶ 2).  Keirton attached exhibits relating to another

23

ORDER - 9

1

### B. Preliminary Injunction

2    Even if the Court has jurisdiction, the Court would nevertheless deny the Motion

3    because Keirton has failed to demonstrate that it would suffer irreparable harm in the

4    absence of injunctive relief.

5    Preliminary injunctive relief, is an extraordinary remedy, "never awarded as of

6    right."  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  A party seeking

7    a preliminary injunction must establish (1) a likelihood of success on the merits; (2) a

8    likelihood of irreparable harm in the absence of preliminary relief; (3) a balancing of

9    equities tips in favor of a preliminary injunction; and (4) an injunction is in the public

10   interest.  Id. at 20; see Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240

11   F.3d 832, 839 n.7 (9th Cir. 2001) (the standards for a TRO and a preliminary injunction

12   are equivalent).

13   The Court concludes that Keirton would not be entitled to a preliminary injunction

14   because it fails to establish a likelihood of irreparable harm.  Although courts do not

15   typically consider monetary injuries as irreparable, "[t]he threat of being driven out of

16   business is sufficient to establish irreparable harm."  hiQ Labs, Inc. v. LinkedIn Corp.,

17   938 F.3d 985, 993 (9th Cir. 2019) (quoting Am. Passage Media Corp v. Cass Commc'ns,

18   Inc., 750 F.2d 1470, 1474 (9th Cir. 1985)).

19

_____

20   case, Root Scis., LLC v. United States, in which CBP argued that the CIT lacks jurisdiction.  Exs. A & B

21   to Thoreson Supp. Decl. (docket no. 26-1).  As CBP states in its response, however, in Root Sciences,
     CBP argued that the CIT lacks jurisdiction over a wrongful seizure claim.  Supp. Response (docket no. 27

22   at 1–3).  District courts have original jurisdiction over seizures.  28 U.S.C. § 1356.  Thus, Keirton's
     reliance on Root Sciences fails.

23

ORDER - 10

Keirton points to the declarations of its President and CEO, Jay Evans, to argue that Keirton will go out of business if it does not obtain injunctive relief.  The statements in Evans's declarations, however, are conclusory.  See Evans Decl. (docket no. 11 at ¶ 14) ("Unless the imminent shipments are permitted entry into the United State[s] in the next two weeks, Keirton will be forced to shut down its assembly operations . . . .").[5] The declaration submitted by Keirton's Director of Manufacturing, Jay Fluckiger, is similarly conclusory.  Fluckiger Decl. (docket no. 12 at ¶ 11) ("Without the ability to import Goods, Keirton will soon have to lay off all of its employees and close the business permanently.").  These declarations do not provide the basis for their conclusions and they are insufficient to establish that Keirton will suffer irreparable harm.  See Am. Passage Media Corp, 750 F.2d at 1474 (conclusory statements from a company's president, standing alone, did not establish irreparable harm); cf. hiQ Labs, Inc., 938 F.3d at 993 (finding irreparable harm where company showed likelihood of having to breach existing contracts with specific clients, that its financing round had been stalled, and that several employees had left the company).  The declaration submitted by

---

[5] Evans initially submitted a declaration that contained statements very similar to the ones that Judge Martinez rejected as too conclusory in November 2020.  Compare Evans Decl. (docket no. 11) with Evans Decl. (docket no. 12) (Case No. 20-1734-RSM).  Evans has now submitted a supplementary declaration, but this declaration is again conclusory.  See Evans Supp. Decl. (docket no. 18).  In his supplemental declaration, Evans states that Keirton will not be able to honor existing contracts with customers in the United States and that he believes customers will therefore turn to a competitor.  Id. at ¶ 4.  Evans, however, does not specify which contracts Keirton will not be able to honor and does not provide any declarations from Keirton's customers to support his statement that they will turn to a competitor.  See Am. Passage Media Corp, 750 F.2d at 1473 (insufficient evidence of irreparable harm where none of company's customers stated it would discontinue business with the company and where the company did not show that the contracts with the customers threatened the company's existence).

Larry Wood, docket no. 24, a CPA and CFP hired by Keirton, mostly repeats what is already in the record and lacks specific details like, for example, what contracts Keirton would breach and the importance of those contracts to the company's existence.  See Am. Passage Media Corp, 750 F.2d at 1473.

The Court determines that, even assuming the Court has jurisdiction, Keirton cannot demonstrate irreparable harm, and its claim for a preliminary injunction fails on its merits.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)      As stated in the hearing on March 26, 2021, the Court DENIES the Motion, docket no. 8, because Keirton has not established irreparable harm.

(2)      After now considering the jurisdictional issue, the Court now DISMISSES the Complaint, docket no. 1, for lack of jurisdiction.

(3)      The Clerk is directed to send a copy of this Order to all counsel of record and to CLOSE the case.

IT IS SO ORDERED.

Dated this 16th day of April, 2021.

Thomas S. Zilly
United States District Judge